# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# VALDOSTA DIVISION

| | |
|---|---|
| VALERIE PLYMALE, | : |
| | : |
| v. | :    CASE NO.: 7:20-CV-102 (WLS) |
| | : |
| CHEDDARS CASUAL CAFÉ INC, | : |
| | : |
| Defendant. | : |
| | : |

## ORDER

Before the Court are two motions filed by the parties in the above-styled action, a Motion for Sanctions (Doc. 13) filed by the Plaintiff on May 14, 2021 and a Motion for Summary Judgment (Doc. 16) filed by the Defendant on June 4, 2021. The Court discusses each motion in turn below. Ultimately, the Court finds that Plaintiff's Motion for Sanctions should be granted, and Defendant's Motion for Summary Judgment should be denied.

## PROCEDURAL & FACTUAL BACKGROUND

### I. Procedural History

The Complaint in the above-captioned matter was initially filed on February 21, 2020 in State Court of Lowndes County, Georgia. (Doc. 1-2.) In her Complaint, Plaintiff Valerie Plymale brings a Georgia slip-and-fall action based on an incident that occurred in Defendant Cheddar's Casual Café, Inc.'s (hereinafter "Cheddar's") restaurant located in Valdosta, Georgia on October 7, 2019. (*Id.*) Plaintiff alleges that, among other things, Defendant Cheddar's failed to inspect for and alleviate dangerous conditions on the premises under its control and failed to warn invitees of known hazards, which caused injury to Plaintiff. (*Id.* at 5.) Defendant Cheddar's responded to Plaintiff's Complaint in an Answer filed in the Lowndes County Court on April 16, 2020. (Doc. 1-7.) Shortly after on May 22, 2020, Defendant Cheddar's issued a notice and petition of removal of the action to this Court. (Doc. 1-18.) Defendant Cheddar's timely Petition for Removal was predicated on

diversity jurisdiction under 28 U.S.C. § 1332.[1] This Court took jurisdiction over the case and issued a Scheduling and Discovery Order for this case on August 12, 2020. (Doc. 8.)

Discovery was initially set to conclude on February 8, 2021 with all dispositive motions due on March 10, 2021. (*Id.* at 2.) However, on November 5, 2020, the Parties jointly filed a Motion to Modify the discovery deadline regarding expert deposition deadlines. (Doc. 9.) The Court granted the motion, allowing the Parties to conduct expert depositions by the end of discovery on February 8, 2021. (Doc. 10.) On January 25, 2021, the Parties again jointly moved to extend the discovery deadlines, requesting that nonexpired deadlines be pushed to May 10, 2021 due to difficulty in taking depositions and the producing additional records. (Doc. 11.) The Court granted the motion, allowing discovery to continue until May 10, 2021, (Doc. 12.)

On May 14, 2021, Plaintiff Plymale, through counsel, filed the instant Motion for Sanctions for spoliation of evidence. (Doc. 13.) Therein, Plaintiff stated the grounds alleging that Defendant engaged in the spoliation of evidence vital to the case and requested a hearing on the matter. (*Id.*) Then, on June 4, 2021, Defendant Cheddar's filed the instant Motion for Summary Judgment. (Doc. 16.)

The Court conducted a hearing on Plaintiff's sanctions motion on July 27, 2021. (Doc. 22.) At the hearing, the Court heard argument from both parties as to the Plaintiff's allegations of spoliation. Both the Motion for Sanctions and Motion for Summary Judgment are ripe for review. *See* M.D. Ga. L.R. 7.3.1.A. The Court addresses Plaintiff's Motion for Sanctions (Doc. 13) and Defendant's Motion for Summary Judgment in turn.

**II. Relevant Facts**

The following facts are derived from the Plaintiff's Complaint (Doc. 1-15); Defendant's Motion (Doc. 16-1), Plaintiff's Response (Doc. 19), Defendant's Statement of Undisputed Material Facts (Doc. 16-7), Plaintiff's Statement of Material Facts (Doc. 20); and

---

[1] In the Petition for Removal, Defendant states that the action could not have been initially filed in this Court because Plaintiff's Complaint did not exceed the necessary amount, $75,000, for diversity jurisdiction despite the fact that the Parties are completely diverse. (Doc. 1 at 4.) However, the case became removable upon Defendant's receipt of Plaintiff's responses to its Requests for Admission, wherein Plaintiff admitted the matter's amount in controversy exceeds the $75,000 limit. (*Id.*)

the record in this case. Where relevant, the factual summary also contains undisputed and disputed facts derived from the pleadings, the discovery and disclosure materials on file, and any affidavits, all of which are construed in a light most favorable to Plaintiff as the nonmoving party. *See* Fed. R. Civ. P. 56; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

On October 7, 2019, Plaintiff Plymale entered Defendant Cheddar's Valdosta, Georgia restaurant with her mother and husband. (Docs. 1-15 at ¶¶ 9-10; 16-7 at ¶1; 19 at 2; 20 at 1.) Plaintiff helped her mother get seated, and then she and her husband went to the restroom. (*Id.*) To reach the restroom, Plaintiff and her husband traversed a hallway where she would soon fall and sustain an injury. (Docs. 16-7 at ¶ 3; 19 at 2; 20 at 2.) When Plaintiff left the restroom, she entered the hallway, slipped on a liquid substance on the floor, and fell. (Docs. 16-7 at ¶ 5; 19 at 2; 20 at 2.) Plaintiff's husband approached her and observed the liquid substance on the floor. (Docs. 16-7 at ¶ 12; 19 at 2; 20 at 3.) As a result of her fall, Plaintiff sustained serious and permanent injuries. (Doc. 1-15 at ¶ 15.) The manager on duty, Jeanette Young, observed the scene and saw that there was liquid on the floor where Plaintiff slipped and fell. (Docs. 16-7 at ¶ 13; 19 at 2; 20 at 13.)

At the time, Defendant Cheddar's maintained a policy and procedure that all restaurant employees always inspect the floors for potential hazards. (Docs. 16-7 at ¶ 15; 19 at 3; 20 at 5.) Defendant's policy requires that when an employee identifies a potential hazard, the employee must guard the area, ask another employee to retrieve cleaning supplies, and warn people of the hazard until it is clear. (Docs. 16-7 at ¶ 18; 20 at 6.) One of Cheddar's employees, William "Brad" Mayes, indicated that he had inspected the area where Plaintiff fell "fifteen times in fifteen minutes" prior to the incident and saw no evidence of liquid on the floor. (Docs. 16-7 at ¶ 20; 19 at 3; 20 at 6.) Though server Mayes was in the vicinity of Plaintiff's fall, he was not facing her direction when she fell and did not actually see her fall. (Docs. 16-7 at ¶ 21; 20 at 7.) Defendant Cheddar's had surveillance cameras recording in the area as well, which took footage of the area where Plaintiff fell. (Doc. 19 at 3.) The footage documenting Plaintiff's fall was not preserved. (*Id.*)

## DISCUSSION

### I. Plaintiff's Motion for Sanctions

#### *A. Spoliation*

"Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Graff v. Baja Marine Corp.*, 310 F. App'x 298, 301 (11th Cir. 2009) (citation and internal quotation marks omitted). An obligation to preserve evidence may arise when a party has notice of potential litigation. Generally, a party has an obligation to preserve evidence when it receives notice that "the evidence is relevant to litigation most commonly when suit has already been filed, providing the party responsible for the destruction with express notice, but also on occasion in other circumstances, as for example when a party should have known that the evidence may be relevant to future litigation." *Walker v. US., I.R.S.*, No. 4:07-CV-0102, 2009 WL 1241929, at *1 (N.D. Ga. Feb. 26, 2009) (*quoting Sapeu v. Bland*, No. 6:04CV129, 2007 WL 2694781, at *1 n. 3 (S.D.Ga. Sept.10, 2007). The burden is on Plaintiff to show "(1) the missing evidence existed at one time; (2) [Defendant] had a duty to preserve the evidence; and (3) the evidence was crucial to Plaintiff [] being able to prove their prima facie case." *In re Delta/AirTran Baggage Fee Antitrust Litig.*, 770 F. Supp. 2d 1299, 1305 (N.D. Ga. 2011). Spoliation becomes sanctionable "'only when the absence of that evidence is predicated on bad faith,' such as where a party purposely loses or destroys relevant evidence." *Walter v. Carnival Corp.*, No. 09-20962-CIV, 2010 WL 2927962, *2 (S.D. Fla. July 23, 2010) (quoting *Bashir v. Amtrak*, 119 F.3d 929, 931 (11th Cir. 1997)).

"District courts have discretion to impose spoliation sanctions against parties." *Walker*, 2009 WL 1241929 at *1 (*quoting Brown*, 563 F.Supp.2d at 1377). "[F]ederal law governs the imposition of spoliation sanctions." *Id.* (*quoting Flury v. Daimler Chrysler Corp.*, 427 F.3d 939, 944 (11th Cir.2005)). In the Eleventh Circuit, a spoliation analysis proceeds under federal law as an evidentiary matter. The Court also looks to Georgia law because the Eleventh Circuit authority does not set forth specific elements or guidelines. *Flury v. Daimler Chrysler Corp.*, 427 F.3d 939, 944 (11th Cir. 2005) (applying federal law as informed by the law of the state of Georgia where "Georgia state law on spoliation is wholly consistent with

federal spoliation principles."). Thus, the Court's analysis of a spoliation claim is informed by factors set out in Georgia law, including "(1) whether the [opposing party] was prejudiced as a result of the destruction of the evidence; (2) whether the prejudice could be cured; (3) the practical importance of the evidence; (4) whether the [party] acted in good or bad faith; and (5) the potential for abuse if expert testimony about the evidence was not excluded." *Id.* To sanction the party at fault for spoliation, a court may dismiss the case, exclude expert testimony, or provide a jury instruction on spoliation of evidence which raises a presumption against the spoliator." *Id.*

Whether a court finds the presence of bad faith is critical in the spoliation analysis and any resulting sanctions. Although the Eleventh Circuit has once previously stated that the Georgia spoliation law is "wholly consistent" with such cases brought in federal court, prevailing precedent rejects the Georgia state law premise that the finding of bad faith is only one factor a federal court must consider when analyzing claims for sanctions based on spoliation.[2] *Woodard v. Wal-Mart Stores East, LP*, 801 F. Supp. 2d at 1363, 1371-72 (M.D. Ga. 2011). Rather, precedent requires a finding of bad faith on the part of the spoliating party, allowing for an adverse inference. *Walter v. Carnival Corp.*, No. 09-20962-CIV at *2 (*quoting Bashir v. Amtrak*, 119 F.3d 929, 931 (11th Cir.1997) (per curiam)). Moreover, to support a finding resulting in an adverse inference, the alleged spoliation must be more than negligent. *See Walker*, No. 2009 WL 1241929, at *1 ("[m]ere negligence in losing or destroying the

---

[2] The Court recognizes that the Eleventh Circuit, in *Flury v. Daimler Chrysler Corp.*, held that a court "should weigh the degree of the spoliator's culpability against the prejudice to the opposing party." 427 F.3d 939, 946 (11th Cir. 2005.) In *Flury*, the Eleventh Circuit admonished the district court for only considering the defendant's culpability in an analysis for sanctions, seemingly demoting bad faith from a requirement for the imposition of sanctions to merely one factor that must be considered. *See id.*; *see also Woodard v. Wal-Mart Stores East, LP*, 801 F. Supp. 2d 1363, 1372 (N.D. Ga. 2011). However, the court in *Flury* was addressing the sanction of dismissal, concluding that such a severe sanction "should only be exercised where there is a showing of bad faith and where lesser sanctions will not suffice." *Flury,* 427 F.3d at 944. This Court, like previous courts in this district, reads *Flury* as such and declines to extend this finding beyond that scope, i.e., that *Flury* removes the existing framework that a finding of bad faith is necessary for spoliation to become sanctionable. *Woodard*, 801 F. Supp. 2d at 1372. Still, because *Flury* presents a potential conflict in authority, the Court specifically finds that it must follow the precedent requiring the finding of bad faith set out in *Bashir v. Amtrak*, 119 F.3d 929, 931 (11th Cir. 1997), because it predates *Flury*. *See id* (citing *Walker v. Mortham*, 158 F.3d 1177, 1188 (11th Cir. 1998) for the premise that courts should look to the earliest case when addressing a conflict of authorities).

records is not enough for an adverse inference, as 'it does not sustain an inference of consciousness of a weak case.'") (internal citation omitted).

Here, Plaintiff Plymale requests that this Court issue sanctions against Defendant Cheddar's based on the destruction of "irreplaceable video evidence" gathered from the restaurant's security cameras that captured her fall and injury. (Doc. 13.) Plaintiff asserts that this video footage is the "best evidence of liability, damages, and causation" because it would show unequivocally how Plaintiff slipped and fell, where she fell, whether there was liquid on the floor, and the origin of any liquid on the floor. (*Id.* at 2, 10.)  Plaintiff argues that Cheddar's "willfully impeded the investigation of the discovery of the truth" of Plaintiff's fall and "severely hamper[ed]" her "ability to prosecute her case." (*Id.* at 4.) Plaintiff further contends that Defendant Cheddar's "lack of candor in discovery" factors greatly into the Court's analysis on the grounds that Defendant destroyed or failed to save the video footage after reviewing it, initially concealed the video footage's existence, and states that it never received notice of Plaintiff's suit despite receiving a spoliation letter from counsel. (*Id.* at 2-3.)

In response, Defendant Cheddar's counters that Plaintiff cannot make a prima facie case for spoliation based on a lack of evidence of bad faith, and further that Cheddar's was not negligent in its "honest mistake" of destroying the video footage because it did not anticipate litigation prior to October 18, 2019 and was not put on proper notice of such litigation. (Doc. 15.) Ultimately, Defendant Cheddar's argues that sanctions are not appropriate on this matter based on this Court's requisite analysis under case precedent. (*Id.*)

There is no dispute the video footage at issue existed. Both Plaintiff and Defendant Cheddar's have made clear in their briefings and provided evidence that the disputed evidence was, at one time, in existence and available. The question, however, is whether Plaintiff can demonstrate that Defendant Cheddar's actually bore a duty to preserve the evidence based on the timing of any notice of pending litigation and whether the evidence was actually crucial to Plaintiff's ability to establish a prima facie case. *In re Delta/AirTran Baggage Fee Antitrust Litig.*, 770 F. Supp. 2d at 1305.

At the outset, the Court notes that Plaintiff has not provided direct evidence or argument to establish that Defendant Cheddar's acted in bad faith. Though Plaintiff alludes to the fact that Defendant Cheddar's engaged in malicious conduct in destroying the video footage (intentionally or recklessly), Plaintiff makes claims of such activity without providing concrete support for any obvious, intentional destruction of the video footage that was potentially beneficial to her case. And while, as explained above, the Eleventh Circuit has noted that an adverse inference can be drawn from a party's failure to preserve evidence, that inference must be based on more than mere negligence and supported by more than mere speculation. *See Walker*, No. 2009 WL 1241929, at *1. Thus, in light of the presented argument, facts, record, and case law, sanctions may not be appropriate in this instance due to the absence of clear evidence of bad faith. *See Walter* 2010 WL 2927962 at *2; *Woodard v. Wal-Mart Stores East, LP*, 801 F. Supp. 2d at 1372. However, before making that final determination, the Court shall address whether Defendant Cheddar's indeed bore a duty to preserve the video footage at issue and whether the loss of such evidence hindered Plaintiff's ability to bring his prima facie case.

Plaintiff Plymale contends that sanctions are appropriate in this case because Defendant Cheddar's breached its duty to preserve evidence, as it was on notice of Plaintiff's impending litigation. (Docs. 13 at 1, 3, 12; 17 at 2-3.) Plaintiff argues that despite Defendant's contentions that the video footage was deleted based on a routine practice and a lack of notice of litigation, Defendant, through its employee Malcom Boykin, acted in bad faith. (*Id.*; Doc. 17.) Plaintiff posits that Defendant Cheddar's was indeed on notice of her impending litigation because of the nature of the incident and based on a spoliation letter mailed to Defendant via certified mail. (Docs. 13 at 3, 12; 17 at 2.) Plaintiff asserts that she is prejudiced by Defendant Cheddar's failure to preserve the video footage because it likely contained "critical evidence of the existence of water on the floor as well as the water's origin." (*Id.* at 9.) She explains that she could have used the video footage to assist in her case but provides little rebuttal to Defendant's assertion that testimony already corroborates Plaintiff's claims and her explanation of the incident and injury. (Docs. 15 at 18-19; 17.)

Defendant counters that no one could confirm the October 25, 2019 signature on the alleged spoliation letter, and that the first time it was aware of said letter was during an evidentiary examination under 30(b)(6). (Doc. 15 at 5.) Defendant also explains, and Plaintiff concedes, that the letter cited the incorrect date of the incident.[3] (*Id.*) Defendant further points out that Plaintiff failed to send any notice or letter to the correct place before December 2019. (*Id.* at 6.) Specifically, Defendant Cheddar's explains that while it could not confirm the receipt of the first spoliation letter, Plaintiff clearly sent the letter to the location of the Valdosta restaurant itself and not their risk management department. (*Id.*) Per Defendant, with no rebuttal from Plaintiff, Plaintiff was contacted by Defendant's risk management department via a letter mailed on October 28, 2019. (*Id.* at 7.) The letter informed Plaintiff as to who was handling claims for Defendant, and she testified she forwarded the letter to her counsel. (*Id.*) Defendant states that it did not hear from Plaintiff or her counsel until December 10, 2019, sixty (60) days after the incident.[4] (*Id.*)

In *Pope v. Wal-Mart Stores East, LP*, the court found that sanctions were appropriate because it determined that spoliation occurred when the defendant store failed to preserve surveillance video after the Plaintiff established that litigation was pending mere days after sustaining injury. No. 4:13-CV-0009-HLM, 2013 WL 12086325 (N.D. Ga. 2013). Based on the available argument and record, the Court finds that Plaintiff's case is distinguishable on the grounds that even assuming that Plaintiff's October 28, 2019 letter may have been received by the proper department of Cheddar's, such notice was given three weeks after the incident at the earliest, or months after the incident at the latest considering the communications from December 2019.

Notably, Plaintiff did not offer strong counter argument on the sufficiency of Defendant Cheddar's video retention policy, which is described in Defendant's response. Defendant Cheddar's stated that it is its risk management policy to "pull video of an incident

---

[3] As Defendant points out, Plaintiff did have oversight regarding the date of the incident throughout this litigation. Plaintiff used a September 2019 date instead of the correct October 2019 in her initial complaint. (Doc. 1-2.) Plaintiff did amend her complaint to include the correct date. (Doc. 1-15.)

[4] Plaintiff argues that this date offered by Defendant is incorrect, stating that Defendant's claims administrator contacted her on December 7, 2019. Thus, Plaintiff contends that the latest Defendant could have been placed on notice of her claim was December 20, 2019, the date the claims administrator sent a follow-up letter to her. (Doc. 17 at 2.)

8

when it anticipates litigation." (Doc. 15 at 4.) Defendant further explains that the system is motion-activated, and therefore activates more frequently in busier restaurants and during busier times. (*Id.*) Per testimony, footage from the system is held for a period based on the amount of footage taken, and that the period "can be as short as 20 days or as long as 90." (*Id.*) Thus, even assuming that Plaintiff's October 28, 2019 letter may have been received by the proper department of Cheddar's so as to place it on notice, the footage was not guaranteed based on policy and practice.

The evidence and arguments on when Defendant Cheddar's was placed on notice of Plaintiff's impending case are clearly in conflict. Plaintiff does posit that the fact she was taken away from the restaurant by EMS via ambulance should have been enough to place Defendant on notice that she would be (or could be) pursuing litigation. (Doc. 17 at 3.) But an injury "without more, is not notice that the injured party is contemplating litigation sufficient to automatically trigger the rules of spoliation." *Aubain-Gray et al. v. Hobby Lobby Stores, Inc.*, 747 S.E.2d. 684, 687 (Ga. Ct. App. 2013). The conflicting arguments regarding Plaintiff's spoliation letter and communications with Defendant pertaining to her pending case leave an open question as to the actual date Defendant should have been aware of the impending litigation. Absent an affirmative date, it remains a genuine question as to whether Defendant should have retained the video footage.[5]

In contrast to the Defendants in *Woodard v. Wal-Mart Stores East, LP* and *Canales v. Pilot Travel Centers, LLC*, Cheddar's offers no explanation for the video footage's destruction other than the assertion that it was deleted based on the video retention practice. No. 7:10-CV-100, 2020 WL 8093583, at *10, (M.D. Ga. Nov. 30, 2020); 801 F. Supp. 2d at 1373. In both cases, the video footage was allegedly lost due to a technical error in the retention of the video or human error due to misfiling or incorrect retention. *Id.* Defendant Cheddar's

---

[5] Unlike the Defendant in *Canales v. Pilot Travel Centers, LLC*, Cheddar's policy on video retention is not set in stone. No. 7:10-CV-100, 2020 WL 8093583, at *10, (M.D. Ga. Nov. 30, 2020). Testimony about the retention policy indicates that the period for which footage is kept varies based on the amount of footage on the system. (Doc. 15 at 4.) Moreover, in the instant case, the question of whether formal notice of the impending legislation based on where (and when) the spoliation letter was received is at issue in this case. In *Canales*, it was clear that the Plaintiff did not communicate with the Defendant for two months following his injury. 2020 WL 8093583 at *10. Here, Defendant Cheddar's confirmed that it reached out to Plaintiff itself a few weeks after the incident (Doc. 15 at 7) and the question remains as to whether Plaintiff contacted Defendant mere days after her injury or weeks. Thus, the Court finds that this case is distinguishable.

9

only states that the video was not kept due to its varied retention period for such video. Similarly, there was no question as to who had viewed the video footage before it was lost in *Canales*. There was also no question of whether the video footage existed at the outset of the case. Here, there remains a question, based on conflicting testimony, as to who all saw the footage as well as a question of why the footage was not preserved.

Plaintiff gives little pushback on Defendant Cheddar's assertion that there is no evidence that the video contained any proof that the events took place any differently than how Plaintiff, her husband, and the other deposed witnesses' testimony confirms. In *Pope* the surveillance video at issue was not viewed by anyone before it was disposed of (and thus there was no available testimony as to what was on the video) and there was no photographic evidence of the location where the injury took place at the time of the accident. *See* 2013 WL 12086325 at *5-*6. Defendant Cheddar's offers the testimony, including that of former managers Jeannette Young and Thomas White, to establish what the video footage included and that Plaintiff's contentions as to the events surrounding her fall were corroborated. Thus, there is record testimony as to what was contained on the surveillance footage. However, that testimony does not specifically address or cure the claims of this case. The provided testimony alone creates a general question of material fact, mainly on whether the floor where Plaintiff fell was wet.[6] Thus, the testimony is not complete cure of the loss of the video footage as there are differing statements regarding whether the floor was wet. *See Woodard*, 801 F. Supp. 2d at 1373.

Moreover, the video could have clarified whether Defendant Cheddar's had actual or constructive knowledge of the alleged hazardous condition. (*See id.*) The video footage of the area leading up to Plaintiff's slip-and-fall would have undoubtedly been relevant to Plaintiff's prima facie case. *See Baxley v. Hakiel Indus., Inc.*, 647 S.E.2d 29, 30 (Ga. 2007) (finding that spoliation occurred where a video showing evidence relevant to central issues of the plaintiff's case was destroyed). The question of whether the video footage at issue would be

---

[6] Plaintiff and her husband both testified that there was liquid on the floor where she slipped and fell. (Doc. 13-1 at 3; 15-3 at 25.) The manager on duty that day, Jeannette Young also testified that the floor in that area was wet. (Doc. 13-6 at 3.) However, manager Malcolm Boykin and the employee in the vicinity, William B. Mayes, testified that the floor was dry. (Doc. 13-4 at 6; 13-13 at 3-4.)

helpful to Plaintiff's case is irrelevant; what matters is the fact that the video footage was relevant to the primary issues of this case and inferences that may have been drawn from it, such as whether the floor was wet, whether the employees were following proper inspection procedure, duration of the presence of any liquid on the floor, etc. may not be drawn or countered because of the loss of the video.

The question remains whether Defendant Cheddar's failure to preserve the video footage was made in bad faith. Historically, "bad faith" has meant deliberate fraud or misconduct. *In re Delta/AirTran Baggage Fee Antitrust Litig.*, No. 1:09-MD-2089-TCB, 2014 WL 12625961, at *32 (N.D. Ga. Nov. 21, 2014). But "a finding of bad faith is said not to require evidence of 'malice.' Direct evidence of bad faith is not necessary; a court may find bad faith by 'drawing inferences from the conduct before it.' *Id.* (citations omitted). In fact, district courts have found that "reckless disregard for potential prejudice to the opposing party, although not rising to the level of malice, amounts to bad faith." *Kraft Reinsurance Ireland, Ltd. v. Pallets Acquisitions, LLC*, 843 F. Supp. 2d 1318, 1327 (N.D. Ga. 2011). *Compare United States v. Gilbert*, 198 F.3d 1293, 1298-99 (11th Cir. 1999) ("observing the 'ordinary meaning' of 'bad faith' 'is not simply bad judgment or negligence, but rather it implies the conscious doing of a wrong because of dishonest purpose or moral obliquity; ... it contemplates a state of mind affirmatively operating with furtive design or ill will'"). Based on this analysis, the Court finds that a finding of bad faith on the part of Defendant Cheddar's is sustainable due to more reckless treatment of the video footage.

Like the court in *Woodard*, the Court finds that the circumstances surrounding Defendant Cheddar's failure to retain the video footage of Plaintiff's slip-and-fall are sufficient to support an inference of bad faith and to justify putting the issue to the jury. *See* 801 F. Supp. 2d at 1375. Multiple questions regarding the retention policy and notice of the pending litigation remain open and ripe for the finder of fact. Defendant Cheddar's clearly understands the need to retain and review video footage of slip-and-fall incidents that take place in its restaurants, as evidenced by the existence of a protocol for retention. However, the validity of that protocol, and the deletion of the footage at issue, hinge on *Cheddar's* presented dates of notice as well as Cheddar's argument that the footage would not serve

Plaintiff's case.[7] Because a question of fact remains as to whether Defendant Cheddar's acted in bad faith, the appropriate sanction in this case is a jury instruction on spoliation. If this case proceeds to trial, the jury will be instructed that if it finds that Defendant Cheddar's lost or destroyed the videotape in bad faith, a rebuttable presumption is created that the footage contained evidence harmful to Cheddar's on the issue of whether Cheddar's had actual or constructive knowledge of the hazard. *See Flury*, 427 F.3d at 944. The parties should provide suggested instructions to that effect should a trial be set. Therefore, Plaintiff's Motions for Sanctions against Defendant Cheddar's is **GRANTED** consistent with this Order.

## II. Motion for Summary Judgment
### *A. Standard of Review*
#### a. Federal Rule of Civil Procedure 56

Federal Rule of Civil Procedure 56 allows a party to move for summary judgment where no genuine issue of material fact remains, and the party is entitled to judgment as a matter of law. "Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Maddox v. Stephens*, 727 F.3d 1109, 1118 (11th Cir. 2013). "A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor." *Chapman v. AI Transp.*, 229 F.3d 1012,

---

[7] There is conflicting testimony as to who viewed the video footage. Further, the general manager at the restaurant, Malcom Boykin, stated in his deposition that there was not any footage of the incident. In his deposition on December 4, 2020, Boykin first testified that he was "not aware" that there was any video taken of the hallway where Plaintiff fell, but then stated that there was video covering that area. (Doc. 15-5 at 28-29.) Later, Boykin submitted an affidavit saying that he had "no recollection of ever having seen video of the subject accident" and that he was unaware that any employee had reviewed the footage until January 14, 2021 when Young was deposed. (Doc. 15-8 at ¶ 4.) Per the record, employees Jeanette Young and Thomas White reviewed the video footage. (Doc. 15 at 3.) Young testified in her deposition that she and Boykin reviewed the footage after she called him to come to the restaurant following the incident. (Doc. 13-6 at 5.) Boykin also testified that Defendant does not have a policy regarding saving video when an incident occurs. (*Id.* at 30, 32.) Because the testimony of Defendant's employees conflicts, the Court finds that a question of fact exists. A jury could draw an inference that Cheddar's would have wanted to preserve the footage that supported its position and its manager's testimony that the floor was dry. Likewise, an inference could be drawn that Defendant may have wanted to eliminate evidence that contradicted or disproved such testimony.

1023 (11th Cir. 2000) (en banc). "An issue of fact is 'material' if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "It is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 998 (11th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The movant bears the initial burden of showing, by reference to the record, that there is no genuine issue of material fact. *See Celotex*, 477 U.S. at 323; *Chapman*, 229 F.3d at 1023. The movant can meet this burden by presenting evidence showing that there is no genuine dispute of material fact, or by demonstrating to the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *See Celotex*, 477 U.S. at 322-24. Once the movant has met its burden, the nonmoving party is required "to go beyond the pleadings" and identify "specific facts showing that there is a genuine issue for trial." *Id.* at 324. To avoid summary judgment, the nonmoving party "must do more than summarily deny the allegations or 'show that there is some metaphysical doubt as to the material facts.'" *Matsushita*, 475 U.S. at 586 (citations omitted). Instead, the nonmovant must point to competent record evidence that would be admissible at trial. *See also Jones v. UPS Ground Freight*, 683 F.3d 1283, 1294 (11th Cir. 2012) (quoting *Macuba v. Deboer*, 193 F.3d 1316, 1322 (11th Cir. 1999)) (noting that hearsay may be considered on a motion for summary judgment only if it "could be reduced to admissible evidence at trial or reduced to admissible form."). Such evidence may include affidavits or declarations that are based on personal knowledge of the affiant or declarant. *See* Fed. R. Civ. P. 56(c)(4).

On a motion for summary judgment, the Court must view all evidence and factual inferences drawn therefrom in the light most favorable to the nonmoving party and determine whether that evidence could reasonably sustain a jury verdict. *See Celotex*, 477 U.S. at 322-23; *Allen*, 121 F.3d at 646. However, the Court must grant summary judgment if there

is no genuine issue of material fact and the movant is entitled to summary judgment as a matter of law. Fed. R. Civ. P. 56(c).

### b. Local Rule 56

Local Rule 56 requires the following:

> The respondent to a motion for summary judgment shall attach to the response a separate and concise statement of material facts, numbered separately, to which the respondent contends there exists a genuine issue to be tried. Response shall be made to each of the movant's numbered material facts. All material facts contained in the moving party's statement which are not specifically controverted by the respondent in respondent's statement shall be deemed to have been admitted, unless otherwise inappropriate.

M.D. Ga. L.R. 56. The Parties complied with the Federal Rules of Civil Procedure, the Local Rules, and the order of this Court by timely filing a motion for summary judgment, a response, and a statement of material facts and a response thereto.

Plaintiff Plymale and Defendant Cheddar's have complied with Local Rule 56 by including with their briefs a Statement of Undisputed Material Facts. (Docs. 16-7, 20.) Noting that this requisite standard is met, and with the above given facts and evidence in mind, the Court now turns to merits of Defendant Cheddar's Motion for Summary Judgment.

### B. *Analysis*

To prevail on a slip-and-fall claim in Georgia,[8] a plaintiff must prove, among other things, "(1) that the defendant had actual or constructive knowledge of the hazard; and (2) that the plaintiff lacked knowledge of the hazard despite the exercise of ordinary care due to actions or conditions within the control of the owner/occupier." *Robinson v. Kroger Co.*, 493 S.E.2d 403, 414 (Ga. 1997). Knowledge of a hazard can be either actual or constructive. To prove actual knowledge of a hazard, a plaintiff "must do more than merely show that [the defendant's] employees had a general knowledge that a hazardous condition might exist." *J.H. Harvey Co. v. Reddick*, 522 S.E.2d 749, 752 (Ga. Ct. App. 1999). Rather, the defendant

---

[8] "A federal court sitting in a diversity action applies state law using the choice of law rules of the forum state, in this case Georgia." *Travelers Prop. Cas. Co. of Am. v. Moore*, 763 F.3d 1265, 1270 (11th Cir. 2014). The Parties do not dispute that Georgia substantive law governs here.

14

must have some kind of specific knowledge of the particular hazard that caused the plaintiff's injury. *Id.* To prove constructive knowledge, a plaintiff may choose between "one of two ways: [1] by evidence that an employee was in the immediate area of the hazard and could easily have discovered and removed it, or [2] by showing that the owner did not use reasonable care in inspecting the premises." *Taylor v. AmericasMart Real Estate, LLC*, 651 S.E.2d 754, 759 (Ga. Ct. App. 2007) (quoting *KMart Corp. v. Jackson*, 521 S.E.2d 93, 96 (Ga. Ct. App. 1999)).

To win a claim for summary judgment, the movant must show that there is no genuine dispute that "reasonable inspection procedures were in place and followed at the time of the incident." *Straughter v. J.H. Harvey Co., Inc.*, 500 S.E.2d 353, 355 (Ga. Ct. App. 1998). Defendant Cheddar's must do more than simply offer "proof of the mere existence of such customary procedures"—it must also offer "[e]vidence establishing an adherence to customary inspection and cleaning procedures on the day in question." *Ingles Mkts., Inc. v. Martin*, 513 S.E.2d 536, 537–38 (Ga. Ct. App. 1999) ("In order to prevail at summary judgment based on lack of constructive knowledge, the owner must demonstrate not only that it had a reasonable inspection program in place, but that such program was actually carried out at the time of the incident."). If, and only if, Defendant Cheddar's meets that burden, then Plaintiff, to survive summary judgment, must proffer evidence upon which a jury could find that the hazard existed long enough for Cheddar's to discover it. *Fussell v. Jimbo's Log Kitchen, Inc.*, 489 S.E.2d 71, 74–75 (Ga. Ct. App. 1997).

Defendant Cheddar's argues that it is entitled to Summary Judgment on Plaintiff's slip-and-fall claim on the grounds that it did not have notice of the alleged hazardous condition despite its "robust and effective" inspection policy because the condition was "too-short lived" to be discovered. (Doc. 16-1.) Specifically, Defendant contends that it did not have actual notice of the alleged condition because none of its employees observed the condition, and no one informed Cheddar's staff of the condition. (*Id.* at 6.) Defendant concedes that though an employee was in the general vicinity of the alleged condition and place where Plaintiff fell but asserts that he was not facing the area and that the employee's presence nearby is insufficient to establish constructive notice. (*Id.* at 7.) Further, Defendant

15

Cheddar's argues that the alleged condition was open and obvious, and that Plaintiff Plymale should have observed the alleged condition to exercise reasonable care. (*Id.*) Plaintiff concedes that there is no direct evidence that Defendant Cheddar's had actual notice of the condition. (Doc. 19 at 6.) However, Plaintiff argues that Defendant had constructive knowledge of the condition because the area of its location was a highly trafficked area and because it had a motion-activated camera system covering the area. (*Id.*) Plaintiff further concedes that Defendant Cheddar's indeed had an adequate policy and procedure for inspection of potentially hazardous conditions. (*Id.* at 7.) Plaintiff contends that whether that policy and procedure was followed is "less clear," and argues that the mere existence of a policy and procedure is not enough to thwart its claim that Defendant had constructive notice. (*Id.*) Plaintiff counters that summary judgment is inappropriate on the grounds that the loss of video footage of her slip-and-fall precludes Defendant's argument regarding knowledge of the alleged condition. (Doc. 19.) Plaintiff also contends that Defendant had time to alleviate the condition based on its policy in place and in proper practice. (*Id.*)

As conceded by Plaintiff, record evidence in the form of deposition testimony makes clear that Defendant Cheddar's maintained an inspection procedure that was in effect on the day of the slip-and-fall. (Docs. 16-1 at 3; 19 at 3, 7.) Defendant's reasonable inspection procedures included constant inspection of the floors by all employees, with managers maintaining a special duty to actively roam around the restaurant to seek out and alleviate potentially hazardous conditions. (Docs. 16-1 at 3-4; 16-4 at 39-40; 16-5 at 39; 16-6 at 21-22.) Per the policy, if an employee found a hazardous condition, the employee was required to stand by the condition and alert a second employee, who would retrieve the necessary equipment to clean or alleviate the condition. (*Id.*) Further, the involved employees were required to place caution signs by the condition and actively warn invitees of the condition. (*Id.*) Defendant asserts that in the fifteen minutes prior to Plaintiff's slip-and-fall, the area where the incident occurred was inspected in accordance with its policy "probably" fifteen times by employee Brad Mayes, who testified that the area was dry and without hazard. (Docs. 16-1 at 4; 16-6 at 18.) Because of this policy and testimony, Defendant posits that the hazardous condition could not have existed five to ten minutes prior to Plaintiff's slip-and-

16

fall and that it was neither placed on constructive notice of the hazard nor had adequate time to discovery alleviate the condition based on such notice or lack thereof. (Doc. 16-1 at 9-10.)

The Court disagrees with Defendant Cheddar's and finds that genuine questions of material fact exist for most of these issues.

First, the evidence, when viewed in the light most favorable to Plaintiff, could allow a reasonable jury to find that Defendant Cheddar's was not following its inspection and cleaning procedures on the night of the fall. No testimony provides evidence that Cheddar's employees, including Mayes, was looking for spills or hazardous condition as they walked through the restaurant. Defendant presents evidence that its inspection policy was in existence and in place but offers no direct evidence that the policy was actively followed on the date of the incident. *See Ingles Mkts.*, 513 S.E.2d at 538 (requiring "[e]vidence establishing an adherence to customary inspection and cleaning procedures on the day in question"). A jury could reasonably infer that Mayes, having allegedly walked through the area fifteen times in fifteen minutes, may have been simply conducting his normal work as a busy server and not inspecting the floors and area as required. Defendant Cheddar's did not produce any evidence of records or logs of any inspections and only produced testimony stating the existence of a set inspection policy and that one employee "probably" looked at the area in question fifteen times in fifteen minutes. Mayes' testimony does not constitute evidence that he, or Cheddar's, was following the procedure, as it is centered on his involvement and observations of the incident after Plaintiff fell. The Court finds that the lack of evidence demonstrating that Cheddar's policy was followed in practice on the day of Plaintiff's slip-and-fall creates a genuine question of material fact. *See Ingles Mkts.*, 513 S.E.2d at 538.

Even if Defendant Cheddar's demonstrated that its inspection procedure was followed on the day of Plaintiff's injury, a question remains as to whether the hazard existed long enough for Cheddar's to discover it. *Fussell*, 489 S.E.2d at 74–75. The testimony conflicts as to whether there was a liquid on the floor at the time. (Docs. 13-1 at 3; 13-4 at 6; 13-6 at 3; 13-13 at 3-4; 15-3 at 25.) There is no evidence to explain how any alleged water came to be on the floor. This question leads the Court back to the discussion of the lost video footage. The absence or loss of the video footage "is sufficient to create an issue of

material fact as to whether" Defendant Cheddar's maintained actual or constructive knowledge of the alleged condition. *Woodard*, 801 F. Supp. 2d at 1370-71. In fact, the loss of the video footage in and of itself could be sufficient to defeat the motion for summary judgment in the case because of the inferences the jury could draw should it find that Defendant acted in bad faith. *Id.* at 1378.

As a result of the determination that genuine issues of material fact exist as to Defendant Cheddar's constructive notice of the alleged condition, the Court finds that summary judgment is inappropriate. *Straughter*, 500 S.E.2d at 355.

## **CONCLUSION**

For the abovementioned reasons, the Court finds that genuine issues of material fact exist as to whether Defendant Cheddar's had constructive knowledge of the alleged hazardous condition that caused Plaintiff's injuries, because genuine disputes exist as to both whether Cheddar's was following its inspection and cleaning procedures at the time of the fall and, independently, whether the condition existed or existed long enough for Cheddar's to discover it (assuming it was following its procedures). Accordingly, summary judgment is inappropriate. Defendant Cheddar's Motion for Summary Judgment (Doc. 16) is **DENIED**.

**SO ORDERED,** this 31st day of March 2022.

/s/ W. Louis Sands
**W. LOUIS SANDS, SR. JUDGE**
**UNITED STATES DISTRICT COURT**